# Derrick v. Brown.

*Bill in Equity for Specific Performance of Contract for Sale or Exchange of Lands.*

1. *Statute of frauds; contract not to be performed within one year.*—A verbal contract, for the sale or exchange of lands, is not an "agreement which, by its terms, is not to be performed within one year from the making thereof" (Code, § 2121), because it is stipulated that the purchase-money is to be paid on the termination of a pending suit, and the suit is not in fact terminated within one year thereafter

2. *Operation of deed; statutory covenants.*—The words "bargain and sell," when used without qualification in a conveyance of land, imply a statutory warranty (Code, § 2193); but, when used in connection with the word "quit-claim," in a deed which purports to convey only the grantor's title and interest, an implied warranty is negatived, and the deed is a mere quit-claim.

3. *Who is bona fide purchaser without notice.*—A person who holds under a quit-claim deed only, can not claim protection as a *bona fide* purchaser without notice.

4. *Revision of chancellor's decree on facts.*—The decision of the chancellor, on a disputed question of fact, will not be disturbed by the appellate court, unless it clearly appears to be erroneous.

APPEAL from the Chancery Court of Jackson.
Heard before the Hon. H. C. SPEAKE.

[Derrick v. Brown.]

The original bill in this case was filed on the 9th November, 1875, by John A. Brown, against Lafayette Derrick and Francis D. Stephens; and sought the specific performance of a contract between complainant and said Stephens, for the sale and purchase of a tract of land, or the exchange of one tract for another. A demurrer having been sustained to the original bill, an amended bill was filed, in which the facts were stated substantially as follows: On or about the 5th December, 1863, the complainant was in possession of a tract of land in said county, "which he had acquired from his father, Jeremiah Brown, since deceased, who had never executed to him a deed for the same"; and said Stephens was in possession of another tract of land, containing one hundred acres, "which he had acquired on the division of the lands of his deceased father, William Stephens." Being thus respectively possessed, on said 5th December, 1863, complainant "purchased from said Stephens the said tract of land" containing one hundred acres, "and paid him therefor the sum of $900, in the promissory notes of other persons, and a tract of land valued at $600," being the said tract of which complainant then had possession, claiming as above stated. "The said notes were surrendered to said Stephens, and he was placed in possession of said land, at the time said trade was made, and he signed and delivered to complainant a memorandum, or note in writing, expressing the consideration of said purchase, and a description of the property so purchased by complainant; which said note, or memorandum," made an exhibit to the bill, was dated the 5th December, 1863, signed by said F. D. Stephens, and in these words: "Received of J. A. Brown one tract of land, valued at $600, and $900 in notes, being payment in full of my interest in my father's (William Stephens) real estate." Under this contract, the parties mutually delivered and received possession of the respective tracts so exchanged; "and complainant and said Stephens remained in the undisturbed possession of the land which they had respectively acquired by their said trade, until some time in the year 1868, when it became known to both parties that there was doubt or incumbrance on the title to the land which they had traded to each other." This defect of title in the land which complainant had held and traded, as above stated, was the want of a conveyance from his father, whose estate proving to be insolvent, it became necessary for the administrator to sell the land under a decree of the Probate Court; and the tract which Stephens had sold was incumbered by a claim of dower preferred by the widow of said William Stephens, whose interest had been bought by the heirs, but, having failed to pay her the agreed purchase-

[Derrick v. Brown.]

money, she instituted a suit to recover her dower interest in the land, or to subject the land to the payment of the pur- chase-money due her. "To meet these difficulties," as the bill alleged, "which had come in the way of the full execu- tion of their said original contract," the parties "had an extension, or incorporated new terms into their said original contract, as follows: Orator was to procure the land, which he had sold to said Stephens, to be sold by the administrator of said Jeremiah Brown, under a proper decree of the Pro- bate Court, and was to pay said Stephens a sum of money equal to what said land might bring at said sale; and it was further agreed that said Stephens should go into the posses- sion of the land which he had sold to complainant, and should occupy the same as his tenant; and, as a compensation for the use thereof, said Stephens was to pay the taxes thereon, and keep the place in good repair, and acquit and release complainant from the payment of interest on the balance of said purchase-money, until the settlement of said dower claim, or the removal of said incumbrance; and when said claim was settled, or said incumbrance was removed, orator was to pay said purchase-money, to-wit, the sum of $302, and said Stephens was to execute to him a good and suffi- cient title to said land."

This new contract being the one which the complainant sought to have specifically executed, he alleged in his bill that, pursuant to its terms, he delivered up to Stephens the possession of the land which he had received under the orig- inal contract, to be held as his tenant under the new agree- ment, and procured the other tract of land to be sold by the administrator of Jeremiah Brown; that the price brought at the sale was $302; that Stephens declared himself satisfied with this, as the value of the land, and received from the complainant, in part payment of the sum, goods to the amount of $35.37; that Stephens continued in the uninterrupted pos- session of the other tract of land, until September, 1872, when he sold and conveyed it, by quit-claim deed, for a nominal consideration, to the defendant Derrick, and delivered the possession to him; that Derrick had knowledge and notice of the complainant's rights, when he made the contract and received the possession; that the dower suit was at that time still pending and undetermined, but was afterwards decided in favor of Stephens; that complainant demanded a specific performance of the contract by Stephens, as soon as the suit was determined in his favor, which was refused; that Ste- phens had become insolvent, and had removed to Texas; that complainant had also tendered to said Derrick said sum of $302, with an additional sum for costs and charges, and had

demanded a conveyance of the legal title, which was refused; and the money was brought into court, to abide its decree. The bill prayed a specific performance of the contract, a divestiture of the legal title, an order and writ of possession, and general relief.

A decree *pro confesso* was entered against Stephens, and he made no defense. An answer was filed by Derrick, admitting that there was a contract between the complainant and Stephens, similar to the alleged original contract, for the sale or exchange of the two tracts of land, but alleging that said contract was, by mutual consent and agreement, rescinded and abandoned in 1868; denying that any new contract as alleged was ever made between the parties, or, if made, that he had any knowledge or notice of it when he bought the land from Stephens, and claiming protection as a *bona fide* purchaser for valuable consideration without notice; insisting that the alleged new contract, if made at all, was void under the statute of frauds, because it was not to be performed within one year, and was not reduced to writing, and pleading the statute as a bar to the relief sought. He alleged that he paid full value for the land, and bought in good faith, after inquiry and examination of the title as shown by the county records. His deed from Stephens, which was made an exhibit, recites the payment of $300 as its consideration, and uses the words " bargain, sell and quit-claim, unto the said Derrick, and to his heirs and assigns forever, all our and each of our right, title, interest, estate, claim and demand, both at law and in equity, as well in possession as in expectancy, of, in, and to that certain tract," &c.

On final hearing, on pleadings and proof, the chancellor held the complainant entitled to relief, and rendered a decree in his favor as prayed; and his decree is now assigned as error by the defendant Derrick.

CLOPTON, HERBERT & CHAMBERS, for appellant.

ROBINSON & BROWN, *contra.*

STONE, J.—The present is a bill for specific performance, and to have title devested out of Derrick, and vested in complainant, Brown. The chancellor decreed in favor of complainant. It is contended for appellant, that under the substituted, or renewed contract, between Stephens and Brown, there can be no recovery, because said renewed contract was simply oral, not evidenced by any writing, and by its terms it was not to be performed within a year; and Derrick pleads that fact in bar of complainant's recovery.—Code of 1876,

[Derrick v. Brown.]

§ 2121, subd. 1. The original contract of sale was in writing, and signed by Stephens. This contract was made in 1863, and was in fact an exchange of lands. The title to the lands given by Brown to Stephens, in part payment of the land sold by the latter to the former, having failed, Brown, in consideration thereof, promised to pay Stephens the value of said land so lost to Stephens—that value to be ascertained in an agreed manner. It was thus ascertained to be· $302. Brown and Stephens were each examined as witnesses, and to this extent their testimony agrees. In one respect they differ. Stephens testifies, that the time was certainly fixed for the payment of the money ; and that time, as testified by him, was less than twelve months from the making of the promise. If this be true, then, of course, the plea of the statute of frauds is not made good. But a suit for the land was pending, instituted by an outside party, under a claim of title, alleged to be paramount alike to that of Stephens and of Brown. Brown testifies, that his promise was to pay that sum, when said suit was decided. It could not be then known when the suit would be tried and determined ; and hence it could not be affirmed that, by the terms of the agreement, the contract was not to be performed within a year. So, in either aspect, the contract, as proved, was not within the statute of frauds.—Browne on Stat. Frauds, chap. 13, §§ 274, 276.

In the next place, Derrick sets up in defense that he is a *bona fide* purchaser of the land, having paid the purchase-money, and received a conveyance, without knowledge or notice of Browne's claim, which was but an equity. To this defense three several objections are urged. *First*, it is claimed that Derrick, when he purchased, had notice of Brown's prior purchase and equity. On this question of notice, Derrick and Stephens are directly at issue in their testimony; the latter swearing positively that notice was given, and the former, with equal emphasis, denying such notice. Brown somewhat corroborates Stephens, as to proof of notice. In the second place, it is contended that Derrick received the title to the land in fraud and secret trust, first, to repay himself for an advance (much less than the value of the land) he had made to Stephens, and to account to Stephens for the balance. On this question, Stephens and Derrick are equally and irreconcilably opposed in their testimony. In support of Stephens' version, it must be conceded that the lands, together with another tract, were purchased at a ·very low figure ; and Derrick's explanation, as to why a part of the purchase price was withheld, and how such balance was to be applied, is somewhat singular. He testifies that

such balance was to be used in paying Stephens' *pro rata* of the expenses of the suit then pending for the recovery of the land. Now, if the suit for the land was unsuccessful, there would be no *pro rata* of costs adjudged against him, to be paid by Derrick. If Stephens lost the suit, then Derrick would lose the land—lose the two hundred and eight dollars he swore he had paid in cash, and, in addition, be required to pay Stephens' *pro rata* of the expenses of the suit, to the extent of the sum withheld—ninety-two dollars.

In the third place, it is urged that Derrick received from Stephens only a quit-claim deed, and therefore can not claim to be a *bona fide* purchaser.—*Smith v. Branch Bank*, 21 Ala. 125, 134–5. The deed is by Stephens and wife, and is without express covenants of warranty. Its granting clause is, "do bargain, sell and quit-claim, unto the said Derrick, and to his heirs and assigns forever, all our and each of our right, title, interest, estate, claim and demand, both at law and in equity," &c. Now, though the words "bargain, sell," are words of implied warranty under our statute, if used without qualification (Code of 1876, § 2193) ; yet, it clearly appears from other words in this conveyance, that they were not so intended. The deed employs the word quit-claim, and expressly limits its granting effect to the "right, title, interest, estate, claim and demand," of the grantors. They conveyed no title other than that they owned, legal or equitable, in possession or in expectancy. Derrick's deed is but a quit-claim, and this precludes him from setting up the claim of *bona fide* purchase without notice.

The chancellor granted complainant relief. In doing so, he pronounced on one or more of the disputed questions of fact noted above. We can not say we are clearly convinced he erred.—*Rather v. Young*, 56 Ala. 94 ; *Bryan v. Hendrix*, 57 Ala. 387.

Affirmed.