RUNYON and others *v.* SMITH and others.

*(Circuit Court, E. D. Michigan.    October 15, 1883.)*

1. QUITCLAIM DEED—NOTICE TO GRANTEE.
    The taking of a quitclaim deed puts the grantee upon inquiry, and precludes his claiming the rights of a *bona fide* purchaser without notice. Especially is this so where the conveyance is only of the "right, title, and interest" of the grantor.

2. DEED OF RELEASE—EFFECT AT COMMON LAW.
    At common law a deed of release was operative only when made to a party in actual possession of the land.

3. ACTUAL NOTICE TO PURCHASER.
    Where a proposed purchaser of land was once distinctly informed that it did not belong to the party of whom he was buying, *held* no defense that he had forgotten the information.

This was an action of ejectment, to recover possession of and determine the title to a lot of land in Ingham county. Plaintiffs' chain of title was as follows:

(1) The United States to Edward Mundy. Patent dated January 15, 1837, and proven by certified copy.

(2) Edward Mundy to Clarkson Runyon. Warranty deed, dated July 5, 1837, recorded July 31, 1877, 40 years after its execution and delivery.

(3) The death of Clarkson Runyon in 1846, and the inheritance of the plaintiffs as his heirs at law.

The possession of defendants was admitted. Defendants' title was as follows:

(1) Edward Mundy to George Sedgwick. This was a devise dated January 2, 1851, which became operative in that year by the death of Mundy, and was proven by certified copy of his will from the probate court of the county. This devise did not purport to convey any particular piece of land, but was a general devise to Sedgwick, in trust, of all the lands of which Mundy might die seized, with power to sell and convert them into cash at any time.

(2) George Sedgwick and wife to Charles Shepard. Quitclaim deed, dated

June 17, 1871, of all of the grantor's "right, title, and interest" in the property. The deed did not purport or undertake to convey the lands themselves, or to execute the trust.

(3) Charles H. Shepard to Edward W. Sparrow. Quitclaim deed of an undivided half of the property, dated November 28, 1872, for a consideration of $250.

(4) Charles H. Shepard to John J. Bush. Warranty deed, dated December 21, 1872, for the nominal consideration of one dollar.

(5) Edward W. Sparrow and John J. Bush to Enoch Smith. Warranty deed, dated June 22, 1875, for the consideration of $2,400.

By stipulation of the parties the case was submitted to the court without a jury.

*E. A. Gott* and *E. F. Conely*, for plaintiffs.

*M. V. Montgomery*, for defendants.

BROWN, J. Upon the retrial of this case, under the statute evidence was given tending to show that Shepard, who bought of George Sedgwick and wife in the year 1871, purchased the lands in actual good faith for $500, and in complete ignorance of any defect in the title. If, as is claimed, he thereby became entitled to the rights of a *bona fide* purchaser without notice, he could undoubtedly convey a good title to Sparrow and Bush, notwithstanding they may have bought with notice. *Godfroy* v. *Disbrow*, Walk. Ch. 260; *Shotwell* v. *Harrison*, 22 Mich. 410. The *bona fides* of a grantee of land is a valuable right incident to his purchase, and to hold that he cannot make a good title to his vendee with notice might seriously impair, and perhaps wholly destroy, the value of his interest.

Assuming, then, for the sake of the argument, that Shepard purchased without notice, we are led to inquire whether the rule applied by the court upon the former trial, that the receipt of a quitclaim deed puts the party upon inquiry and prevents his claiming the rights of a *bona fide* purchaser, is sound, in view of the statutes of this state and the adjudications of the supreme court. If the supreme court of the state has announced a different doctrine, then we should be constrained to apply it here, notwithstanding the opinions of the supreme court of the United States, since it is a rule of real property obligatory upon this court. The enactments relied upon by the defendants read as follows, (Comp. Laws, § 4205:)

"A deed of quitclaim and release, of the form in common use, shall be sufficient to pass all the estate which the grantor could lawfully convey by a deed of bargain and sale." Sec. 4231: "Every conveyance of real estate within this state * * * which shall not be recorded, * * * shall be void as against any subsequent purchasers in good faith, and for a valuable consideration," etc.

In support of the proposition that the supreme court has construed this as giving to purchasers under quitclaim deeds the same rights that purchasers under warranty deeds would have, we are referred to the case of *Battershall* v. *Stephens*, 34 Mich. 74, wherein it is said to be laid down in the supreme court of the United States, *contrary to*

*what our statute requires,* that the bare fact that the deed set up against an unrecorded conveyance is a quitclaim, is sufficient notice to deprive the grantee in it of the character of a purchaser in good faith." The case did not call for this expression of opinion, as the court held that the documentary evidence showed distinctly that the plaintiff was not a purchaser in good faith. The remark was simply thrown out as an illustration that there might be "honest incidents having a recognized legal influence to give the transaction (the sale of land) a determinate character, and one not answering to the legal idea denoted by the expression in the statute." Indeed, the observation was something less than a *dictum.*

The sections in question (and we are referred to no other) certainly contain nothing directly upon the subject of notice. Indeed, by section 4231 the vital question of "good faith" is expressly left open. It is only the "purchaser in good faith" that is protected. What, then, was the object of the enactment? That it was intended to change the existing law, or to settle some disputed question, we are bound to presume. Its purport is entirely clear. At common law a deed of release was operative only when made to a party in actual possession of the land. It was intended to enable a person who had bought lands and entered into possession in good faith, to buy in the reversion or to protect himself against outstanding titles. If another party was in possession, the deed was inoperative and void. Where the right of property and the possession were united in the same person, a conveyance could only be made by feoffment and livery of seizin. Wash. Real Prop. 356, 359; *Porter* v. *Perkins,* 5 Mass. 236; *Warren* v. *Childs,* 11 Mass. 222; *Somes* v. *Skinner,* 3 Pick. 58; *Thacher* v. *Cobb,* 5 Pick. 423; *Russell* v. *Coffin,* 8 Pick. 143; *Bennett* v. *Irwin,* 3 Johns. 366.

To obviate the injustice which was constantly occasioned by the general misunderstanding as to the effect of quitclaim deeds, and to give effect to the obvious intention of the parties in such cases, a statute was passed in Massachusetts declaring, in the precise language of section 4205 above quoted, that a deed of quitclaim and release of the form in common use in that state should be sufficient to pass all the estate which the grantor could lawfully convey by a deed of bargain and sale. The statutes of Massachusetts upon the subject of real estate having been adopted in this state, this section was incorporated with the rest. I am unable to see how it bears in any way upon the question under consideration. The other cases cited from the Michigan reports (*Eaton* v. *Trowbridge,* 38 Mich. 454; *Stetson* v. *Cook,* 39 Mich. 753,) are equally indecisive. In other states the opinions of the courts are conflicting. In Illinois, Colorado, and Missouri the rule seems to be that a purchaser without notice under a quitclaim deed will be protected. In Alabama and Iowa the contrary is held. *Butterfield* v. *Smith,* 11 Ill. 485; *Brown* v. *Banner, etc., Coal Co.* 97 Ill. 214; *Bradbury* v. *Davis,* 5 Colo. 265;

*Fox* v. *Hill,* 74 Mo. 315; *Walker* v. *Miller,* 11 Ala. 1067–1082; *Smith's Heirs* v. *Branch Bank,* 21 Ala. 125; *Derrick* v. *Brown,* 66 Ala. 162; *Springer* v. *Bartle,* 46 Iowa, 688.

Turning to the supreme court of the United States as the ultimate arbiter of the controversy, we find it stated in *Oliver* v. *Piatt,* 3 How. 333, 410, that the agreement which was the basis of the suit "contained a stipulation that Oliver should give a quitclaim deed only for the tracts, and the subsequent deeds given by Oliver to him accordingly were drawn up without any covenants of warranty, except against persons claiming under Oliver or his heirs and assigns. In legal effect, therefore, they did convey no more than Oliver's right, title, and interest in the property; and under such circumstances it is difficult to conceive how he can claim protection as a *bona fide* purchaser, for a valuable consideration, without notice, against any title paramount to that of Oliver." It must be conceded, however, that the case did not require the determination of this point. This *dictum* is repeated, and the above case quoted with approval, in *May* v. *LeClaire,* 11 Wall. 217, and in *Villa* v. *Rodriguez,* 12 Wall. 323.

In two more recent cases arising from this state the same principle is reannounced. *Dickerson* v. *Colgrove,* 100 U. S. 578, was a writ of error to the circuit court for the western district. Mr. Justice SWAYNE, in his opinion, cited the former cases, and observed that a purchaser under a quitclaim deed is not a *bona fide* purchaser. This was substantially repeated in *Baker* v. *Humphrey,* 101 U. S. 494, in a case appealed from this court. These reiterations of the doctrine leave little room for doubt in my mind that, were the question squarely presented, the court would feel itself concluded by them. At least, we deem it our duty to treat the question as settled until that court shall revise its own opinions. Should the supreme court of this state put a different interpretation upon the statute, we should have no hesitation in adopting it here.

The rule that a purchaser under a quitclaim deed is chargeable with notice of outstanding titles, commends itself to our judgment as the wiser and safer doctrine. As a matter of fact, most people who deal in real estate understand that in taking a simple quitclaim they put themselves in a position of one who negotiates commercial paper after maturity. Such person is chargeable with notice from the very fact that the paper is overdue, and will not be heard to say that he paid full consideration, supposing that no equities existed. The purchaser under a quitclaim deed takes such interest as the grantor has to convey, and assumes the risk of buying up or defeating outstanding claims. To hold him protected against them is offering a strong temptation to speculative dealing in doubtful titles, and fraudulent concealment of actual knowledge of facts, which a rigid enforcement of the rule of the supreme court would prevent.

But there is another conclusive answer to defendants' claim that Shepard purchased in good faith. His deed was not an ordinary

quitclaim, but a simple release and quitclaim of all of Shepard's "right, title, and interest" in the property. It did not even purport upon its face to convey the land, but only passed to the grantee what he had taken under Mundy's will, which was nothing. *Eaton* v. *Trowbridge*, 38 Mich. 454.

The deed from Shepard to Bush was a warranty deed. While this circumstance is indicative that the grantee was a purchaser in good faith, the deed was no evidence that he paid a valuable consideration. The only consideration named is one dollar, and there is no evidence of his having paid more. This was incumbent upon the defendants, if they desired to show that Bush was a *bona fide* purchaser for a valuable consideration. I have already given my reasons for believing, as a question of fact, that Smith, who took under a warranty deed from Sparrow and Bush, had actual notice of the outstanding title in the plaintiff. I will repeat them here.

It seems that Smith, being desirous of purchasing these lands, went to the auditor general's office at Lansing, and found that Mr. James B. Gott was paying the taxes upon them, and that Mr. Gott lived at Ann Arbor. He thereupon employed a Mr. Bingham to write a letter to Mr. Gott, asking him whether he owned the land in question, and, if so, what he asked for it, saying: "If you don't own it, will you be kind enough to inform me as to the owners." This appears to have been in 1869, as Mr. Gott's reply is dated June 10th of that year. He says: "Your letter in regard to Ingham land was received some time since, and was accidentally mislaid. I am the agent for the land; it belongs to parties living in New Jersey. I have been informed the land is a good quarter section, well timbered, and worth about fifteen dollars per acre. If you wish to make a purchase send me a proposition, stating amount and time of payment; I will forward it to the owners." Shortly after this Smith went to Ann Arbor to negotiate with Mr. Gott for the purchase of the land. He made an offer for it, and was told by Mr. Gott that he would write to the parties who were the owners, and have them either write to him or to Mr. Smith directly. Notwithstanding this, however, he afterwards purchased the land of Sparrow and Bush, who resided at or near Lansing, and took the abstract furnished by them as exhibiting the true state of the title. It is now claimed that he supposed that the title which they had was the one represented by Mr. Gott. That, however, is inconsistent with the information contained in the letter that the lands were owned in New Jersey. It seems that he consented to take a deed of the land from Sparrow and Bush without making any inquiries respecting the title represented by Mr. Gott, and indeed without mentioning his name to Sparrow or Bush. Mr. Gott and the parties whom he represented had paid taxes upon these lands from the time that Runyon had taken title to them up to 1874. It is also claimed that although defendant Smith might have been informed of the title represented by Mr. Gott, he may have forgotten

it before he purchased of Sparrow and Bush. We think, however, that all that the plaintiffs can be called upon to do is to bring home to Smith information of their title at any time before he took his deed. They are not driven to the impossibility of proving that he had not forgotten that information, and even if he had it was a mistake for which he should answer and not the plaintiffs.

A judgment will be entered in favor of the plaintiffs for twenty-four twenty-fifths of the land in question.