109 So.2d 705

Crowder DUNN

v.

Charles L. CAMBRON.

8 Div. 923.

Supreme Court of Alabama.

Feb. 26, 1959.

H. G. Bailey, Boaz, for appellant.

Starnes & Starnes, Guntersville, for appellee.

STAKELY, Justice.

This was a suit filed in the circuit court of Marshall County, in Equity, by Charles L. Cambron against Crowder Dunn for

the purpose of having a boundary line established.

Submission for final decree was on the bill of complaint as amended, answer and cross bill of respondent and testimony taken before the register.

A decree was rendered by the court wherein the boundary line was established as contended for by the complainant. From the final decree the respondent below has appealed to this court.

■ The major contention on this appeal is that the trial court's action in establishing the boundary line as insisted upon by the appellee, the complainant below, was reversible error. Where a cause is submitted on testimony taken orally before a register and not before the court rendering the decree, it is the duty of the Supreme Court on appeal to sit in judgment on the evidence. Dillard v. Hovater, 254 Ala. 616, 49 So.2d 151; Tipton v. Tipton, 249 Ala. 537, 32 So.2d 32; Floyd v. Green, 238 Ala. 42, 188 So. 867.

The record shows, and it is undisputed, that W. W. Elder was the original owner of the tracts of land on both sides of the boundary line sought to be established. On July 1, 1915, W. W. Elder conveyed to R. E. Aldridge land southeast of this boundary line by a deed describing the land in part as follows:

"Beginning at the South West corner of the North West fourth of the North West fourth of Section thirty-six, township nine, range four east, and running east along south line of said forty acres, five chains and thirty links to a sweet gum tree on south side of Slab Creek, thence in a North-easterly direction eleven chains and thirty-eight links *to three sweet gum trees in a bunch on the North side of said Slab Creek, thence North Westerly, South Westerly and Wester-ly, along a road near foot of hill within three chains and ninety one links of point of beginning, thence in a straight line to point of beginning,* three and one fifth acres more or less, situated in Marshall County, Alabama." (Emphasis supplied.)

The emphasized portion of the above quotation refers to the description of the boundary line between the lands of the complainant and the respondent, which is here in dispute. This deed was recorded on July 1, 1918. The respondent traces his title by recorded deeds from Aldridge down to himself and the above quoted description appears in each deed.

On November 11, 1919, some five years after the conveyance to Aldridge, W. W. Elder conveyed to F. M. Duke land northwest of the disputed boundary line by a deed describing the land as follows:

"Beginning at the Northwest corner of Section 36 and running East on said Section line to first quarter corner, thence South to a sweet gum tree, thence in a southwesterly direction *to three sweet gum trees, thence Southwesterly course to Public road.* Thence west with Mt. Vernon and Boaz Public road to a rock corner, thence North 65 yards to a corner, thence East 250 yards to section line. Thence North 265 yards to Point of beginning, all the above being in Section 35 and 36 in Township 9 Range' 4 East and containing 50 acres more or less in Marshall County, Alabama." (Emphasis added.)

The emphasized portion of the description above refers to the disputed boundary in this cause. The evidence shows that on December 17, 1935, Asa Hamby, the county surveyor at that time, was called upon to survey the land sold to F. M. Duke by W. E. Elder in 1919. On January 7, 1936, Elder executed a quitclaim deed to Duke which deed was made "to perfect the description of the lands heretofore conveyed to F. M. Duke by the grantor herein (Elder) by Deed dated Nov. 5, 1919. * * *" This deed described the land conveyed in the words used in Asa

Hamby's survey of December 17, 1935. The boundary which is the cause of dispute in the instant case was described in the Hamby survey and in the quitclaim deed as follows:

"* * * to three Sweet Gum trees on the Bank of the Creek, thence South 46° West 15.00 chains to a rock corner, thence North 82° West 3.00 chains to the Mt. Vernon and Boaz Public road * * *."

The land passed by subsequent conveyances to J. L. Allen, each deed describing the property in the words used in the 1936 quitclaim deed from Elder to Duke, quoted above. When Allen conveyed the property to complainant, C. L. Cambron, a survey was made by one Gilbert Hart, a copy of which was attached to complainant's deed. This deed using the Hart survey as a guide, described the boundary line which is here disputed as follows:

"* * * to an iron pin near the corner formerly designated as three Sweetgum trees, thence South 49 degrees and 10 minutes West 932.8 feet to an old rock corner, * * *."

In his amended bill of complaint, complainant described the boundary line identically with the way said line was described in the 1936 quitclaim deed from Elder to Duke, which description has been previously set out.

The final decree of the lower court stated:

"The deed description of complainant describes the line in dispute substantially as contended by him in this action. The deeds of Respondent contain a description that is extremely vague and uncertain and impossible to plat. Respondent, as far as the Court can ascertain from the pleadings and proof, is relying almost solely on adverse possession of the disputed strip, but without color of title."

The court then went on to fix the boundary as prayed for in the bill of complaint.

After carefully examining the language in the respondent's deed which describes the boundary line here in dispute, which description is repeated in all of the deeds in respondent's chain of title back to W. W. Elder, the original owner of the land on both sides of the disputed boundary, we find that we cannot agree with the trial court that such description is vague and uncertain. The description begins with "three sweet gum trees in a bunch on the North side of Slab Creek." There is no dispute over this point. The description goes on to state, "thence Northwesterly, Southwesterly and Westerly along a road near the foot of hill within three chains and ninety-one links of point of beginning." There was undisputed testimony by a number of witnesses, for the complainant as well as for the respondent, to the effect that an old road (referred to as a "farm road") ran along the foot of a hill from the three sweet gum trees in a generally southwesterly direction to a corner on or near the Mt. Vernon and Boaz public road. The undisputed evidence shows that the road, which had been there for many years, was not straight, but wound and meandered in its course between the two points described above. The language in the deeds which states that the line ran "Northwesterly, Southwesterly, and Westerly along a road * * *", is not vague, uncertain, or contradictory. It is a matter of common knowledge that a winding, meandering road may run in several directions as it twists and turns its way between two points. Finally, the the description in respondent's deed, with reference to the disputed line states, "* * * along a road near foot of hill within three chains and ninety-one links of point of beginning, thence in a straight line to point of beginning." There is nothing vague or uncertain about this description. The point of beginning is stated plainly in all of the deeds in respondent's chain of title as being the "Southwest corner of the Northwest ¼ of the Northwest ¼ of Section 36, Township 9, Range 4, East." Any competent surveyor could follow a

road until he reached a point on that road which was a specified distance from another specified point and could plat a straight line between these two points.

■ The evidence shows that the road referred to above, though not a public road, was nevertheless well-defined and had been in existence for many years. Accordingly, this road would suffice to designate a line between coterminous lands. Whitlow v. Moore, 246 Ala. 472, 21 So.2d 253.

Having concluded that the description of the boundary line in question, as it appears in appellant's deed and in all of the deeds in appellant's chain of title back to the original owner of the land on both sides of the disputed boundary, is not too vague and uncertain to be ascertained, we now proceed to consider the question of which of the two lines contended for by the complainant and the respondent respectively, if either, is the correct true boundary line between the lands of the parties.

As has been previously shown, the original owner of the land on both sides of the disputed boundary line was W. W. Elder. In 1915 Elder conveyed the parcel of land southeast of the disputed line to R. E. Aldridge by deed describing the boundary in question as has been previously set out and as it appears in respondent's deed and in the deeds of all of the owners subsequent to Aldridge and prior to respondent. This deed was recorded in 1918. In 1919 Elder conveyed the parcel of land northwest of the disputed boundary to F. M. Duke by deed which described the boundary line in question in the following words: " * * * to three sweet gum trees, thence Southwesterly course to Public road." This description of said land though not clear and definite was not inconsistent with the description in the prior deed from Elder to Aldridge, if it be considered that the words "Southwesterly course to Public road" meant "Southwesterly course *along a road at the foot of a hill to Public road.*" But then in December of 1935, more than

16 years later, Asa Hamby, the county surveyor at that time, was called in to make a survey of the lands then owned by F. M. Duke. The Hamby survey with regard to the disputed line called for a straight line from the three sweet gum trees to a rock corner in a direction South 46° West a distance of 15 chains. This survey was apparently made using only the deed of Duke without any notice to the then owner of the land southeast of the line.

■ We point out here that a line run by a county surveyor at the instance of one party without notice to the other as required by Title 56, § 7, Code of 1940, is not presumed correct as against such other party. May v. Willis, 200 Ala. 583, 76 So. 941.

■ In January of 1936 Elder executed a quitclaim deed to Duke which purported to be for the purpose of perfecting the description of the land conveyed by Elder to Duke in 1919. This deed described the land as it was described in the Hamby survey. A quitclaim deed conveys nothing more than what the grantor actually owns. Derrick v. Brown, 66 Ala. 162; Adams v. Pollak, 217 Ala. 688, 117 So. 299. Since Elder had already conveyed to R. E. Aldridge by deed dated July 1, 1915, land southeast of the road running from the three sweet gum trees to the public road, he had no further interest in that land southeast of said road. Therefore, the quitclaim deed executed by Elder to Duke in 1936 could not have conveyed to the line described in said deed (from the three sweet gum trees, South 46° West 15 chains to a rock corner), because said line was and is southeast of said road described in Elder's deed to Aldridge.

We now turn to the question of whether or not there has been any adverse possession by complainant or his predecessors in title which would prevent a fixing of the true boundary line as it is described in appellant-respondent's deed.

The evidence tends to show that there has never been any dispute over this boundary line before the present suit. There was some testimony of the fact that F. M. Duke, a predecessor in title of complainant, had cultivated two small patches of land south of the road claimed by respondent to be the boundary. It was not clear exactly when this land was cultivated or for how long. There is no evidence to show that any of the persons holding title to the land subsequent to Duke ever cultivated or used the land south of the road. A very strict burden rests on one claiming title to land by adverse possession under color of title to establish his title as against one claiming title through unbroken chain of record title. Spradling v. May, 259 Ala. 10, 65 So.2d 494; Duke v. Harden, 259 Ala. 398, 66 So.2d 899. We do not consider that there is sufficient evidence to hold that the complainant acquired title to the land up to the line he claims to be the true boundary line, by adverse possession.

Respondent in his cross bill asks that the disputed boundary line be fixed according to a survey made by one F. H. Lee. This survey purported to run a bearing along the south side of the "farm road", which is referred to in respondent's deed. There was no evidence to indicate that the complainant was notified of the Lee survey. There is, therefore, no presumption of the correctness of this survey as against complainant. May v. Willis, supra. For this reason we do not feel that it would be proper to fix this survey as the true boundary line.

As we have already stated we do not find the description of the disputed boundary line as described in respondent's deed to be too vague and uncertain to be ascertained. We conclude that the decree of the lower court should be reversed and the cause remanded with instructions for the lower court to appoint a surveyor to plat the line in accordance with respondent's deed, i. e., running from the three sweet gum trees along a winding road at the foot of a hill to a point 3 chains and 91 links from the Southwest corner of the Northwest ¼ of the Northwest ¼ of Section 36, Township 9, Range 4 East, then in a straight line to said Southwest corner of the Northwest ¼ of the Northwest one-fourth of Section 36, Township 9, Range 4 East, and fix the boundary line in accordance with such survey. The cost of said survey should be divided equally between the parties.

Reversed and remanded with instructions.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.