152 So.2d 431

**STANDARD OIL COMPANY**

v.

**Susie M. MILNER et al.**

**6 Div. 403.**

Supreme Court of Alabama.

April 5, 1962.

As Modified on Denial of Rehearing
Jan. 17, 1963.

Further Rehearing Denied May 9, 1963.

---

White, Bradley, Arant, All & Rose, Romaine S. Scott, Jr., and J. Robt. Fleenor, Birmingham, for appellant.

Graham, Bibb, Wingo & Foster, Birmingham, for appellees.

GOODWYN, Justice.

Appellees (Susie M. Milner, Martha Milner Benedict, and Gustrine Milner Mabry) filed in the circuit court of Jefferson County, in equity, a bill against appellant (Standard Oil Company) seeking a declaration that, as between the parties, Standard Oil "owns no right, title or interest" in a specified portion of an abandoned railroad right-of-way and that appellees are the owners in fee simple of such property. Standard Oil brings this appeal from a final decree granting to appellees the relief they prayed for.

What has to be decided is the ownership, as between the parties, of that portion of the southeasterly half of the abandoned right-of-way lying adjacent to two 15 foot alley-ways which are adjacent to a lot owned by Standard Oil. The portion involved is cross-marked on the drawing set out below. Bearing on the question are several conveyances, and also two plats abutting both sides of the right-of-way, which are discussed hereinafter.

Our conclusion is that the trial court correctly held that title to the disputed strip, as between the parties, is in appellees.

The following drawing will be helpful in understanding the situation:

All of this land is in the North half of the Southeast quarter of Section 6, Township 18 South, Range 2 West, Jefferson County. In 1889 it was owned in fee simple by John T. Milner, W. J. Milner, and George H. McLaughlin. In January of that year, these owners, joined by their wives, conveyed to Birmingham Mineral Railroad Company, for a recited consideration of $5.00, "the right-of-way for its Railroad, to be twenty five feet each side of the center line of the Railroad as located, and to be constructed and operated in and over" said land. The portion of the 50 foot right-of-way of present concern is, as already noted, cross-marked on the above drawing. The deed contains the following reservation, habendum clause, and warranty:

"* * * reserving to ourselves and assigns all minerals in or upon said land together with the right to mine and remove the same. * * * See Plat attached showing location which is made

a part hereof. .* * * . To Have and to Hold the above granted strip of land, unto the said Birmingham Mineral Railroad Company, or its assigns, for- ever. And in consideration of the. premises we do. covenant to and with the Birmingham Mineral Railroad Company, its successors and assigns, that the above granted premises are free from all encumbrances, that we are lawfully seized in fee, and that we will forever warrant and defend the same to said Birmingham Mineral Railroad Company, its successors or assigns, against the lawful claims and demands of all persons whomsoever."

On January 11, 1904, the Louisville & Nashville Railroad Company acquired all the right, title and interest which Birmingham Mineral Railroad Company acquired under its 1889 deed. from the Milners and McLaughlin.

On September 28, 1954, the Louisville & Nashville Railroad Company quitclaimed to Standard Oil all of its right, title and interest to the portion of the right-of-way here involved. There is no dispute that, at that time, there had been a complete abandonment of the right-of-way for railroad purposes. The deed from Louisville & Nashville Railroad Company to Standard Oil and other deeds from said company show this. Also, the evidence shows that the rails and crossties have been taken up.

Through mesne conveyances, Milner Land Company, Inc., acquired, on November 9, 1912, all the right, title and interest which the Milners and McLaughlin had in the North half of the Southeast quarter of Section 6, subject to the rights acquired by Birmingham Mineral Railroad Company under its 1889 deed. The conveyance to Milner Land·Company was by general warranty deed and embraced "all of the north half (N.½) of the southeast quarter (S.E.¼) and the south half (S.½) of the northeast quarter (N.E.¼), of section six (6), township eighteen (18) south, range two (2) west", excepting certain parcels of land not

here involved. Included in the exceptions was the following: "(H.) And subject to the right of way over said lands heretofore conveyed to the Birmingham Mineral Railroad Company by John T. Milner, W. J. Milner and George H. McLaughlin and their wives, by deed which was filed for record January 21st, 1890, and recorded in Volume 132 at page 583 of the records in the office of the Probate Judge of Jefferson County, Alabama."

On May 14, 1919, Milner Land Company conveyed to William Mitchell Smith the following described land (located to the southeast of the railroad right-of-way) in the North half of the Southeast quarter of Section 6, viz.:

"Beginning at the point of intersection of the south line of said N½ of SE ¼ of Section 6 with the west line of a 50 foot street whose center is the centerline of the Pump House Road, thence westward in said south line of N½ of SE¼ 1067.8 feet *to the southern right of way line of the Birmingham Mineral railroad which right of way line is 25 feet southward of and parallel with the center of the track thence in a northeasterly direction along said southern right of way line of said railroad 1082.7 feet to the western line of the Pump House Road Street*; thence along said west line of said Pump House Road Street in a southerly direction 543.2 feet to the point of beginning. EXCEPTING AND RESERVING therefrom all the iron ores in and under same, together with the right to mine and remove said iron ores, provided that the grantor, its successors or assigns, shall not in the exercise of said right, use or disturb the surface of said land in any manner whatsoever. *. * *" [Emphasis supplied.]

Thereafter, through mesne conveyances, Charles R. Byrd acquired said land sold to Smith and subdivided it, by plat filed November 1, 1926, into what is known as English Village, West Sector; the North line of the part of this subdivision with which

we are concerned being along the South line of the railroad right-of-way.

On July 13, 1939, Byrd sold to Standard Oil Lot 3 (less the easterly 10 feet) in Block 3 of said subdivision.

On July 17, 1924, Milner Land Company subdivided its land lying to the north of that part of the railroad right-of-way of present concern, said subdivision being known as Milner Land Company's Sixth Addition to Birmingham. It then sold lots 3 (on July 28, 1924), 4 (on January 4, 1926), and 5 (on August 22, 1925), in Block 20, of the subdivision. Each deed describes the lot being conveyed as follows: "Lot Three [Four] [Five] in Block Number Twenty according to the map and survey of Milner Land Company (Inc.) known as Milner Land Company's Sixth Addition to Birmingham, as recorded in Volume 14 of Maps, on page 21–22 in the office of the Judge of Probate of Jefferson County, Alabama." As will be seen from the drawing above, these lots abut the North line of the railroad right-of-way opposite the portion in dispute. After abandonment of the railroad right-of-way, the owners of these three lots quitclaimed to Standard Oil all of their right, title, interest, and claim in or to the disputed portion of the right-of-way.

On October 15, 1941, Milner Land Company conveyed to appellees all of its property situated in Jefferson County, Alabama. Some of the parcels were specifically described. There was also a general description, as follows:

"All property, real, personal, or mixed, of every kind and character and wheresoever situated, owned, belonging to, or possessed by Milner Land Company, Inc. on the date of the execution of this instrument (other than that property specifically described elsewhere in this instrument)."

The right-of-way was not specifically described, except as to the minerals therein. These were included in the description covering all the minerals in the lands embraced in the Plat of English Village, West Sector (the iron ores therein were reserved, as already noted, in Milner Land Company's deed of said lands to William Mitchell Smith), and within the railroad right-of-way between said Plat and the Plat of Milner Land Company's Sixth Addition to Birmingham. (The minerals within the right-of-way were reserved, as already noted, in the right-of-way deed from the Milners and McLaughlin to Birmingham Mineral Railroad Company). The North boundary of these mineral lands is described in said deed to appellees as beginning at the point of intersection of the South line of the NE ¼ of the SE ¼ of Section 6 with the North line of the right-of-way, thence running in a Northeasterly direction "along the said North line of the right-of-way."

The above conveyance of October 15, 1941, to appellees was the only deed or instrument executed by Milner Land Company affecting "any right, title or interest which the said Company had, if any, in the strip of land" here involved.

On this appeal, there appears to be no real disagreement between the parties that the 1889 deed from the Milners and McLaughlin to Birmingham Mineral Railroad Company conveyed only a right-of-way easement and did not pass the absolute fee (see: Town of Citronelle v. Gulf Oil Corp., 270 Ala. 378, 381–382, 119 So.2d 180; Seaboard Airline Ry. v. Banks, 207 Ala. 194, 195, 92 So. 117; Alabama Great Southern R. Co. v. McWhorter, 202 Ala. 455, 456, 80 So. 839; New Orleans & Northeastern R. R. v. Morrison, 203 Miss. 791, 35 So.2d 68, 70; Jones v. New Orleans & Northeastern R. Co., 214 Miss. 804, 59 So.2d 541, 542; 44 Am.Jur., Railroads, § 97; 74 C.J.S. Railroads § 84c; Anno: "Deed to railroad company as conveying fee or easement", 132 A.L.R. 142. Cf. Rowell v. Gulf, M. & O. R. Co., 248 Ala. 463, 465, 467, 28 So.2d 209); nor that the absolute fee, subject to the easement, remained in the grantors; nor that the abandonment of the right-of-way easement by said grantee's successor in interest (Louisville & Nashville Railroad Company) has had the effect of restoring to said grantors, or their successors in inter-

est (appellees), the absolute fee, free of said easement, unless the grantees, or their successors in interest, have, by some action taken by them, parted with such fee. 44 Am.Jur., Railroads, § 110, 74 C.J.S. Railroads § 117, c, e. Accordingly, the Louisville & Nashville Railroad Company's conveyance to Standard Oil did not pass title to the disputed strip and is of no significance in this case.

One alternative position taken by Standard Oil is that, when it acquired title to Lot 3, in Block 3 of English Village, it also acquired the fee to the disputed strip, subject to the railroad right-of-way easement; and that, upon abandonment of such easement, the absolute fee in said strip vested in it. The basis for this insistence is twofold. The first is that the deed from Milner Land Company to Smith operated as a conveyance of the fee to the center of the right-of-way on the theory that there was a presumed intention to convey such fee (Milner Land Company being the owner of the fee in the right-of-way and also the owner of the land abutting the right-of-way on the North); and that Standard Oil, in acquiring Lot 3, in Block 3 of English Village, has succeeded to Smith's ownership of the fee in that part of the right-of-way here involved. The second insistence is that Standard Oil's ownership of said Lot 3 gives it the fee to the strip on the theory that such fee is appurtenant to its ownership of said lot. Relied on in support of this is the statement first appearing in Snead v. Tatum, 247 Ala. 442, 25 So.2d 162, and repeated in Lybrand v. Town of Pell City, 260 Ala. 534, 71 So.2d 797, and Town of Citronelle v. Gulf Oil Corp., 270 Ala. 378, 119 So.2d 180, that "The fee in the land to the median line of the street or way is appurtenant to the attingent lots along the street."

Standard Oil's other alternative insistence (made in event of a holding that the deed from Milner Land Company to Smith did not pass the fee to the strip and that the fee in the strip is not appurtenant to Standard Oil's ownership of Lot 3, in Block 3 of English Village) is that the owners of Lots 3, 4, and 5, in Block 20 of Milner Land Company's Sixth Addition to Birmingham, which lots abut the right-of-way on the north opposite the disputed strip, together acquired, by their deeds to said lots, the fee to the disputed strip, subject to the right-of-way easement; that, upon abandonment of such easement, the absolute fee to such strip vested in them; and that Standard Oil has acquired such absolute fee by conveyances from said abutting owners. This insistence is also two-pronged, being based on a presumed intention to convey the fee in the strip and also on such fee being appurtenant to ownership of said Lots 3, 4, and 5. The theory is that the platting of the land adjoining the right-of-way on the North and the sale of Lots 3, 4, and 5, according to said Plat, operated as a conveyance of the fee to the entire width of the right-of-way adjacent to said lots (which includes the disputed strip) since Milner Land Company, the grantor of said lots, owned such fee and did not own the land abutting the South side of the right-of-way.

The position taken by appellees is that the deed from Milner Land Company to Smith itself rebuts any presumption of an intention to convey the fee in any part of the land over which the right-of-way easement was granted; that, accordingly, Smith did not acquire the fee therein, based on a presumed intention to convey it, and neither did Standard Oil, as Smith's successor in interest to Lot 3, in Block 3 of English Village; that Standard Oil did not acquire the fee to the strip by reason of said Lot 3 being appurtenant to the strip (assuming it to be appurtenant); and that appellees, having acquired, through mesne conveyances, the fee in the disputed strip subject to the right-of-way easement, have now acquired the absolute fee in such strip by virtue of the abandonment of the right-of-way easement.

Appellees also take the position that the owners of Lots 3, 4, and 5, to the North of the disputed strip, did not acquire the fee to said strip (on either the theory of pre-

sumed intention to convey it or the theory that it is appurtenant to ownership of lots abutting the right-of-way) and, therefore, their deeds to Standard Oil were ineffective as conveyances of title to the strip.

From the foregoing, the following basic and decisive questions arise, viz.:

(1) Did the 1919 conveyance from Milner Land Company to William Mitchell Smith include the fee to the disputed portion of the right-of-way, based on a presumed intention to convey it? We hold that it did not. Accordingly, Standard Oil, claiming as one of Smith's successors in interest, could acquire, on the basis of a presumed intention to convey the fee, no more right in the strip than Smith had.

(2) When Lots 3, 4, and 5, in Block 20 of Milner Land Company's Sixth Addition to Birmingham, were conveyed by Milner Land Company, did such conveyances, taken together, also pass the fee to the disputed strip, subject to the right-of-way easement, on the theory of a presumed intention to pass it? We hold that they did not. Accordingly, the owners of said lots did not acquire such fee on that theory and their quitclaim deeds to Standard Oil did not pass such fee.

(3) Does Standard Oil own the fee to the strip on the theory that such fee is appurtenant to its ownership of Lot 3, in Block 3 of English Village, West Sector? We hold that it does not.

(4) Did Standard Oil acquire the fee to the strip on the theory that such fee was appurtenant to Lots 3, 4, and 5, in Block 20 of Milner Land Company's Sixth Addition to Birmingham, and that Standard Oil acquired such fee under the quitclaim deeds to it from the owners of said lots? We hold that it did not.

Our reasons for these holdings follow.

#### (1) and (2)

■■ It is a general rule that a private conveyance of land bounded by or abutting on a highway or a railroad right-of-way, the fee to which belongs to the abutting owner, is presumed to pass the fee to the right-of-way to the center line thereof, and under certain circumstances to the opposite side. 8 Am.Jur., Boundaries, § 49, p. 781; 11 C.J.S. Boundaries § 45, pp. 594–596; Tiffany, The Law of Real Property, Vol. 4, § 996, p. 113, n. 93; Annotations: "Description with reference to highway as conveying title to center or side of highway," 2 A.L.R. 6, 47 A.L.R. 1276, 123 A.L.R. 542, 49 A.L.R.2d 982; "Boundary under conveyance of land bordering on railroad right of way," 85 A.L.R. 404. This rule is based on a presumption that the grantor intended to convey such fee along with and as a part of the conveyance of the abutting land, generally on the theory that he did not intend to retain a narrow strip of land which could hardly be of use or value except to the owner of the adjoining land.

■ Milner Land Company, by the deed to it of November 9, 1912, from the Milners and McLaughlin, acquired the absolute fee to the land within the right-of-way, subject to the railroad easement. It also acquired the absolute fee to the lands abutting the right-of-way on the north and south. When it conveyed the land south of the right-of-way to Smith, the north boundary of such land, as already shown, was described as running "to the southern right-of-way line" of the right-of-way and "thence in a northeasterly direction along said southern right-of-way line." In view of the holding in Tuskegee Land & Security Co. v. Birmingham Realty Co., 161 Ala. 542, 552, 49 So. 378, 381, we have concluded it was not intended by this conveyance to pass any title to the land within the right-of-way. Accordingly, Standard Oil, as Smith's successor in interest to a part of said land, has not acquired the fee to the strip in dispute on the theory that Smith acquired such fee under the presumed intention rule. As said in that case:

"* * * The three lots were described as a whole, and not separately, and as described formed a parallelo-

gram, the corresponding sides of which were, respectively, 100 feet and 140 feet. The northern boundary of the lots was described as the southern boundary of Avenue A, the eastern boundary as the western boundary line of Seventeenth street of such city, the southern boundary as the northern margin line of a '20-foot alley,' and the western boundary described as a straight line 140 feet long, and parallel with the eastern boundary and Seventeenth street. It will be observed that this property abuts Avenue A on the north, Seventeenth street on the east, and an alley on the south, but extends no farther than the southern margin of Avenue A, the western margin of Seventeenth street, nor the northern margin of the alley—thus rebutting what might otherwise be a presumption that the deed passed the fee, subject to the public easement of right of way, to the center of the avenue, street, and alley, which were named as three of the boundaries of the property. While the avenue, street, and alley constitute three of the four boundaries, there is no presumption in this case, because of these recitals, that it was contemplated or intended to pass title to any part of the soil of such thoroughfares."

We are persuaded that such holding is of controlling effect on the question whether Milner Land Company's 1919 deed to Smith passed the fee to any part of the land within the railroad right-of-way, under the presumed intention rule. For authorities in other jurisdictions in accord with the holding in Tuskegee Land & Security Co. v. Birmingham Realty Co., supra, see: 8 Am.Jur., Boundaries, § 39, p. 776, n. 2; 11 C.J.S. Boundaries § 35, c(1) (c), p. 584; Thompson On Real Property, Perm.Ed., Vol. 6, §§ 3410, 3411, pp. 623–625; Tiffany, Real Property, Third Ed., Vol. 4, § 996, p. 109, notes 72–74.

We have examined the case of New Orleans & S. R. Co. v. Jones, 68 Ala. 48, 55–56, relied on by Standard Oil, and find it is not in conflict with the Tuskegee Land & Security Co. case.

As to the second question, we hold that the reason for the rule of presumed intention to convey just simply is not present in this case, and that there is no basis for applying it. Cf.: Sheffield & Tuscumbia Street Railway Co. v. Rand, 83 Ala. 294, 298, 3 So. 686; Dunham v. Williams, 37 N.Y. 251; Thompson on Real Property, Perm.Ed., 1962 Replacement, Vol. 6, § 3070, p. 687.

When Milner Land Company's Sixth Addition to Birmingham was platted, a street known as the Pump House or Cahaba Road was already in existence, with its west line being the east line of the part of the railroad right-of-way here involved. Upon abandonment of such right-of-way, the part of it here involved would reasonably be expected to become valuable property, separate from and independent of abutting lands. In this situation, it would indeed be an arbitrary and harsh rule which would vest the full fee to such part of the right-of-way, upon its abandonment, in the owners of the lots to the north simply because the backs of their lots abut it.

### (3) and (4)

■■ These two questions arise out of the statement, first appearing in Snead v. Tatum, 247 Ala. 442, 25 So.2d 162, supra, without supporting authority, that "the fee in the land to the median line of the street or way is appurtenant to the attingent lots along the street." And, as already noted, the same statement was repeated in Lybrand v. Town of Pell City, 260 Ala. 534, 71 So.2d 797, supra, with Snead v. Tatum being the only authority cited in support, and in Town of Citronelle v. Gulf Oil Corp., 270 Ala. 378, 119 So.2d 180, supra, with the Snead and Lybrand cases being the only authorities cited in support.

(For the purposes of the case before us, we will assume that Lot 3, in Block 3 of English Village, and Lots 3, 4, and 5, in Block 20 of Milner Land Company's Sixth Addition to Birmingham, are attingent to the disputed strip and that an abutting own-

er's ownership of a fee in a railroad right-of-way is controlled by the same principles applicable when a street is involved.)

If the quoted statement means that the owner of a lot, solely as an incident to and by reason of such ownership, also becomes the owner of a fee in an adjoining street, then there would be left no field of operation for the rule of presumed intention to convey a fee, because the two rules would be incompatible. The effect would be to do away with the rule of presumed intention to convey. But we do not think such was intended by the quoted statement. Rather, from a consideration of the full opinion in Snead v. Tatum, it seems apparent that the court, in reaching a decision, recognized the rule of presumed intention to convey.

As already observed, no basic authority is cited in support of the statement that the fee in a street "is appurtenant to the attingent lots along the street." On the other hand, there is considerable authority in this and other jurisdictions that, "as a general rule, the title to land additional to that described cannot pass as an appurtenance." Wilson v. Cooper, 256 Ala. 184, 186, 54 So.2d 286; Alford v. Rodgers, 242 Ala. 370, 373, 6 So.2d 409, 410; 16 Am. Jur., Deeds, § 295, p. 605; 26 C.J.S. Deeds § 106b(1), p. 905. From Alford v. Rodgers is the following:

"* * * [A]s a rule a grantee can acquire by his deed only the land described in it, and does not acquire by way of appurtenant land outside such description.
* * * * * *

"For in Humphreys v. McKissock, 140 U.S. 304, 11 S.Ct. 779, 781, 35 L. Ed. 473, it was said, quoting from Woodhull v. Rosenthal, 61 N.Y. 382, 390, that 'land can never be appurtenant to other land, or pass with it as belonging to it. All that can be reasonably claimed is that the word "appurtenance" will carry with it easements and servitudes used and enjoyed with the lands for whose benefit they were created. Even an easement will not pass unless it is necessary to the enjoyment of the thing granted.' "

The foregoing was quoted with approval in Wilson v. Cooper, supra.

There was no necessity, in deciding the questions presented in the Snead, Lybrand, and Town of Citronelle cases, of relying on the quoted statement originating in the Snead case. The same conclusion would have been reached in each of those cases without regard to the quoted statement.

There was no statute in existence in this state at the time of the conveyances here involved, nor do we find any presently existing, prescribing what rights abutting lot owners have to the fee in adjacent streets or other ways. And, of course, we are not here concerned with any question as to whether, or to what extent, the legislature may constitutionally define such rights.

In the absence of a valid statute providing otherwise, it is our view that a conveyance of an abutting lot, in and of itself, does not convey a fee in an adjacent street, except by application of the principle of a presumed intention to pass such a fee, the grantor being the owner thereof. This is so because the title to the land embraced in a lot abutting a street is separate and apart from the title to the land within the street, in the absence of a valid statute providing to the contrary. For instance, to say that a person acquiring title to an abutting lot thereby acquires a fee in the street, even though his grantor could not have conveyed such fee, would have the effect of taking property from one owner and giving it to another. The constitutional implications are obvious. Suppose an owner plats his land into lots and lays out a street, one side of which adjoins the land of another. In platting the land, such owner retains the fee to the entire width of the street. If the owner on the other side of the street plats his property with lots abutting the street, what would be the

basis for saying that a grantee of one of his lots then acquires the fee to the center of the street even though his grantor did not own such fee?

The quoted statement from Snead v. Tatum does not mean literally that the ownership of an abutting lot carries with it the ownership of the fee to the center of an adjoining street, without regard to ownership of the fee being in the grantor and without regard to the intent to convey such fee. What was evidently intended was that a conveyance of a lot abutting a street is presumed to pass the fee to the center of the street (subject, of course, to the public use of it as a highway), if the grantor is the owner of the fee. For statement of the principle of presumed intent to convey a fee in an adjacent street, see Thompson on Real Property, Perm. Ed., 1962 Replacement, Vol. 6, § 3068, p. 666.

For an excellent discussion dealing with some of the questions presented in this case, see Vol. XIV, Ala.Law Rev., No. 1, pp. 102–119, "The Fee Appurtenant—A New Estate in Land," by Albert F. Simpson, Jr.

The original opinion has been modified on application for rehearing.

Rehearing denied.

Affirmed.

All the Justices concur.