264 So.2d 491

**Martha Milner BENEDICT**

·v.

**John W. LITTLE et al.**

6 Div. 881.

Supreme Court of Alabama.

May 25, 1972.

Rehearing Denied July 27, 1972.

John S. Foster, Birmingham, for appellant.

F. Eugene Wirwahn, Birmingham, for appellees.

MERRILL, Justice.

This appeal is from a decree in a declaratory judgment proceeding. The dispute was over the title to a segment of land which was a part of a 50-foot railroad right of way that had been abandoned by the railroad. The trial court ruled in favor of respondents and complainant Benedict appealed.

The bill of complaint, as last amended, gives a history of the title to the property, but it will be partially condensed in this opinion. In 1889, John T. Milner, W. J. Milner, G. W. Milner and George H. Mc-

Laughlin conveyed a 50-foot right of way to Birmingham Mineral Railroad Company and that railroad conveyed it to Louisville & Nashville Railroad Company, hereinafter called L & N. At the time of the conveyance, the named grantors owned the property through which the right of way was granted. Title passed by mesne conveyances to Milner Land Company and that company conveyed, in 1941, an undivided one-half interest to Susie Martin Milner, an undivided one-fourth interest to appellant, Martha Milner Benedict, and an undivided one-fourth interest to Gustrine Milner Mabry. This deed was recorded. Prior to the filing of this bill, Susie Martin Milner and Gustrine Milner Mabry died and willed their interest in the property to Martha Milner Benedict, who now owns the property.

The bill further avers that the grantors in the above-mentioned deed to Birmingham Mineral conveyed only an easement for railroad right of way purposes, reserving to themselves the title to the segment, subject to the railroad right of way; that after L & N had abandoned the railroad right of way, Susie M. Milner, Martha Milner Benedict and Gustrine Milner Mabry owned, free of the right of way easement, the segment of the land over which the right of way had been granted.

The bill contains the following averments: " * * * The opinion of the Honorable Alabama Supreme Court in Standard Oil Company vs. Milner, et al., 275 Ala. 104, 152 So.2d 431, confirms that following the abandonment of the right-of-way as aforesaid, Mabry, Milner and Complainant owned the said segment, free of the right-of-way easement. The last cited opinion accorded the said right-of-way deed, executed to Birmingham Mineral Railroad Company, attached hereto as exhibit 'A', the same construction the Complainant accords the said deed."

The bill avers, on information and belief, that the Littles, respondents, own a tract of land adjacent to and immediately south-east of the segment; that the tract of land the Littles own includes Lot 8, Block 1, according to the survey of English Village, East Sector, and that the Littles claim that they own the segment because they own the land abutting the segment.

The bill alleges that Benedict, complainant, denies that the Littles own, or that either of them owns, the segment; and that, hence, there is an actual, justiciable controversy between Benedict and the Littles.

The bill alleges that Benedict has no adequate remedy at law; and, by this bill, Benedict offers to do equity.

The bill seeks a judgment declaring that Benedict owns the segment and that neither of the Littles has any right, title or interest in the segment. The bill contains a prayer for general, or alternative relief.

The answer alleges that the respondents acquired title to the segment from L & N in 1957; that the respondents entered in possession of the segment and have remained in possession since that date; that after obtaining the deed from L & N, the respondents made improvements on the segment to the extent of many thousands of dollars; that the respondents paved almost the entire segment, installed a culvert and retaining wall thereon, and have openly, notoriously, continuously and adversely held title to the segment since obtaining the said deed; that complainant was aware of the fact that the respondents "have been" in notorious, hostile, continuous and adverse possession of the segment since obtaining the said deed and that the respondents were making improvements on the segment, and until the filing of this suit the respondents had no notice of the fact that the complainant claimed any interest in, or title to, the segment; that the complainant is estopped by her failure to notify the respondents of their respective claims during the process of the construction of the improvements; that the respondents erected a large office building immediately contiguous to the segment, and since prior to 1955 have utilized the seg-

ment for parking facilities and as a means of ingress and egress to the said improvements; that a portion of the segment is used as a public way and so maintained as a public way by the City of Mountain Brook, is used for garbage service, parking of some 12 cars and access to the office building owned by the respondents and erected by the respondents prior to the filing of this suit.

The appellees' answer and cross bill concluded with a prayer for the following relief: That the City of Mountain Brook be made a party respondent hereto, and "upon a final hearing in this cause will adjudicate that Complainants have no right, title or interest in and to the property claimed by the Complainants, and will further adjudicate that your Respondents own said property subject only to the public way and a portion thereof as described hereinabove," and for general relief.

Mountain Brook filed an answer and cross bill, in which it said that it did not claim to own any interest in the segment and it denied that it required any portion of the segment as a public way for providing municipal services.

On November 9, 1970, the court rendered a final decree, holding that the complainant has no right, title or interest in the segment, and that title to the segment is vested in the respondents, John W. Little and Frances T. Little.

In its decree, the trial court stated that the case of Standard Oil Company v. Milner, 275 Ala. 104, 152 So.2d 431, "appears on its face to be absolutely controlling as to the legal title in this cause as far as the background of the title is concerned," but that the decree in that case does not control for reasons referred to later in this opinion.

The first sentence in the opinion in Milner v. State, 275 Ala. 104, 152 So.2d 431, names the appellees as Susie M. Milner, Martha Milner Benedict and Gustrine Milner Mabry. (Later, as already stated, Susie and Gustrine died leaving the full title to Mrs. Benedict). Standard Oil Company's lot abutted the southern boundary of the abandoned railroad right of way on the west side of Cahaba Road. (A map appears in 275 Ala., p. 106, 152 So.2d, p. 432). The lot of the Littles, appellees in the instant case, abuts the southern boundary on the east side of Cahaba Road. Standard Oil had received a quitclaim deed from L & N. Standard Oil contended that it owned the segment of the abandoned right of way which abutted its lot as against the three owners holding under their deed from Milner Land Company in 1941. This court held that Mrs. Benedict and her two co-owners had better title to that segment of the right of way than Standard Oil.

■ It is our considered judgment that the *Milner* case is controlling. One strong reason is a statement in a stipulation signed by counsel on August 27, 1970. The opinion of the trial court states that "the evidence and stipulations" were considered. The statement in the stipulation reads: "Complainant Benedict thus now owns whatever title and right to the strip which the deed executed by Milner Land Company last above mentioned vested in her (Benedict), Milner and Mabry." Under Standard Oil Co. v. Milner, supra, this placed the title in Mrs. Benedict on August 27, 1970, by agreement of the parties. When the parties stipulate that certain facts exist, those facts are taken as true by this court. Harper v. Talladega County, 279 Ala. 365, 185 So.2d 388.

We now consider the points on which the trial court distinguished the instant case and *Milner*.

■ In its opinion, the trial court stated that in *Milner* "adequate access was afforded along a dedicated roadway, whereas, in this case a way of necessity is involved." The "adequate access" and the "dedicated roadway" in *Milner* was Cahaba Road. The "adequate access" and the "dedicated roadway" here is the same Ca-

haba Road. The only difference is that the tract in *Milner* bounded Cahaba Road on the west, while the tract here involved was just across Cahaba Road and bounded it on the east. In Kirkland v. Kirkland, 281 Ala. 42, 198 So.2d 771, this court said that if one can get to his own property through his own land, he cannot claim a way of necessity through the land of another. The way sought as one of necessity must be indispensable. That the way sought is more convenient than another way already existing is no reason for obtaining it as a way of necessity. Here, appellees can get from their property to Cahaba Road because it abuts Cahaba Road. We cannot agree that access is a distinguishing feature in the two cases.

The trial court's opinion also contains this statement: "The Court also advises that the parties in this cause ignored in their stipulation the fact that the deed by which Complainants are vested in title, as shown on Page 5 of the stipulations, is, in fact, a quit claim deed rather than a statutory warranty deed."

■ It is true that the conveyance from Milner Land Company to the appellant and her co-owners in 1941 was a quitclaim deed. But if the grantor has a good legal title a quitclaim deed is as effectual to pass it as a warranty deed. Heath v. Scarborough, 248 Ala. 302, 27 So.2d 632. Also, this same type deed was held sufficient against just as strong a claim of title as the appellees here had in the *Milner* case. Under the holding in that case, we can see no merit in this so-called distinction.

■ Moreover, in *Milner*, this court held that the quitclaim from L & N to Standard Oil Company "did not pass title to the disputed strip and is of no significance in this case." By the same token, the quitclaim from L & N to appellees conveyed nothing because L & N had nothing to convey after abandoning the right of way and removing the rails and crossties. A quitclaim deed can convey nothing more than what the grantor actually owns.

Dunn v. Cambron, 268 Ala. 651, 109 So.2d 705, and cases there cited.

■ We are constrained to hold that title to the segment was in Mrs. Benedict and the trial court erred in holding that title was in appellees.

We come now to the final and most important distinction sought to be made. The opinion of the trial court states that in *Milner*, there were no improvements mentioned, whereas, in this case considerable improvements have been made by the respondents. The improvements consisted of leveling and paving the strip, installing drainage pipe and building a retaining wall, principally so the segment or strip could be used for parking in connection with a "Butler" type building on appellees' adjacent property.

The trial court found that because appellant and her co-owners remained silent while appellees improved the segment, Mrs. Benedict is now estopped to claim the segment as against the appellees and, therefore, title to the segment is vested in appellees.

The question of estoppel can be disposed of briefly. The general elements of estoppel are discussed in Ivy v. Hood, 202 Ala. 121, 79 So. 587. The third element, as stated in *Ivy*, concerns knowledge of the facts by the party invoking the estoppel and this court said:

"On this question it has been declared generally by our court that, where the instrument under which the person claims title is duly of record, no mere silence on his part as to his title will work an estoppel, since the registration provided by statute is all the notice one is required to give, so long as he remains passive. Steele v. Adams, 21 Ala. 534, 541; Porter v. Wheeler, supra [105 Ala. 451, 17 So. 221]. * * *"

■ In view of the stipulation quoted supra, and the fact that the deed had been recorded since 1942, and appellees were on constructive notice of appellant's interest

in the segment, the defense of estoppel as to title could not prevail, and the trial court erred in assigning estoppel as one of the grounds for declaring title to be in appellees.

■ However, the improvements on the segment had been made prior to the decision in *Milner*, 275 Ala. 104, 152 So.2d 431, decided in 1963. Since it has been decided that appellees had no title, we choose to consider that the improvements were put on the property by mistake; and apply the principle that where a person makes improvements upon the property of another or otherwise increases its value, being induced by fraud, duress, undue influence, or *mistake* of such a character that he is entitled to restitution, he is entitled to an equiable lien upon the property. Lee v. Menefield, 249 Ala. 407, 31 So.2d 581; Restatement, Restitution, p. 689, § 170, p. 640, § 160.

In 31 C.J.S. Estoppel § 148, p. 735, it is stated:

"* * * It is a fundamental part of the doctrine of equitable estoppel that the estoppel extends only so far as may be necessary to protect from loss the party entitled to assert it; he may claim indemnification but not profit; and hence it should be limited to what is necessary to put the parties in the same relative position they would have occupied if the predicate of the estoppel had never existed."

Our case of McCarty v. Gant, 248 Ala. 668, 29 So.2d 136, says:

"Another principle well settled in the law is that, 'estoppels * * * are protective only, and are to be invoked as shields and not as offensive weapons, and that their operation should be limited to saving harmless, or making whole, the person in whose favor they arise, and they should never be the instruments of gain or profit.' * * *"

See also, Pugh v. Pugh, 224 Ala. 461, 140 So. 415.

■ The authorities uniformly hold that where the owner, by his conduct, encouraged the occupant to make improvements or conducted himself while they were being made so as to estop him from asserting his title, such estoppel applies only to the extent of giving the improver a lien on the land to compensate him for the improvements. See Section 170 of American Law Institute's Restatement of the Law of Restitution; 41 Am.Jur.2d 495; 42 C.J.S. Improvements § 6, p. 429; 2 Pomeroy's Equity Jurisprudence (Fifth Ed.) 65; Annotations in 76 A.L.R. 304, 24 A.L.R.2d 11 and 57 A.L.R.2d 263.

The stipulation shows that the segment is valued at $7,000.00; that the aggregate cost of improvements is $2,600.00 consisting of $500.00 for leveling, $700.00 for paving, $400.00 for drainage pipe, and $1,000.00 for that part of the retaining wall on the segment.

Appellees would be unjustly enriched if they could obtain title to $7,000.00 worth of land merely for expending $2,600.00 on improvements on land that was not theirs.

■ It follows that the trial court should enter a decree declaring that the title to the segment is in appellant, subject only to a lien in the amount of $2,600.00 on the segment in favor of appellees, in the event the sum of $2,600.00 is not paid into court by appellant for the use and benefit of appellees within twenty days.

Reversed and remanded with directions.

HEFLIN, C. J., and HARWOOD, BLOODWORTH and MADDO, JJ., concur.