LYONS, Justice.
Sharon Melton appeals from a January 7, 2009, judgment of the Lee Circuit Court denying Melton’s claims alleging trespass and seeking a judgment declaring that she had an easement over real property owned by Harbor Pointe, LLC (“HP”).[1]

Procedural History and Factual Background

On April 15, 2008, Melton sued HP in the Lee Circuit Court stating a claim of trespass and seeking a judgment declaring that she had an easement by prescription and by implication across property owned by HP. Specifically, Melton alleged that she had used the easement to access her property “openly and hostilely for the statutorily required ten year period, Section 18-3-1 of the Code of Alabama [1975], and therefore ha[d] established the easement through prescriptive means.”
The trial court received ore tenus evidence at a bench trial held in July 2008. *697 Maxine Jackson, from whom HP had purchased its property and who owned property over which HP contended Melton had an alternate means of access to her property, did not testify. The trial court subsequently viewed the disputed property and, on September 3, 2008, it entered an order stating:
“When the case began, the court asked the question whether or not Ms. Maxine Jackson should be joined as a necessary party.... After reviewing the property, the court is now convinced that pursuant to Rule 19, [Ala. R. Civ. P.,] Ms. Jackson should be joined as a party and at the very least testimony should remain open until she testifies before the court.”
On November 12, 2008, the trial court received ore tenus evidence from Jackson. As the hearing began, the court asked Melton’s attorney: “[H]ave y’all chosen to add her in or are you just going to call her as a witness?” Melton’s attorney responded: “We are just calling her as a witness, I guess, Judge.” Jackson testified, but she was never added as an indispensable party to the action under Rule 19, Ala. R. Civ. P.
The evidence presented to the trial court in July and November 2008 shows the following facts. In the 1930s, Melton’s great-great-grandfather, Lemmie Morgan, owned farmland in Lee County. His land was eventually subdivided and conveyed to family members. The record does not disclose all the various conveyances, but by 1990 Melton’s aunt, Eva Mae Williams, owned a parcel known as lot 9B and Melton’s uncle, Wilbert Tolbert, owned a parcel known as lot 10. The record does not show that Tolbert ever owned any interest in lot 9B or that Williams ever owned any interest in lot 10. Lot 10 was situated immediately east of lot 9B. Lot 9B was landlocked. Immediately east of lot 10 was a road running north to south, access to which over lot 10 forms the basis of this litigation.
In 1990, Melton purchased lot 9B from Williams. Tolbert granted Melton a 30-foot-wide easement across lot 10 for the benefit of lot 9B. The easement was platted across the southern part of lot 10. Although the easement was platted in a specific location, Melton and Tolbert believed that Melton could access lot 9B through lot 10 anywhere she wanted. As a result, when Melton built a house on lot 9B in 1990, she built a driveway on the northern part of lot 10 with Tolbert’s oral permission, not on the southern part of lot 10, where her easement was situated according to the plat. Melton used the driveway on the northern part of lot 10 to access her house for 18 years.[2]
There is some indication in the record that Tolbert may have granted another easement in favor of lot 9B across land he owned to the south of lot 10 that was eventually acquired by a family named Bass. However, because the references to the documents by the witnesses and attorneys are not clear and because facts .regarding this issue were never - explored or explained on-the record during trial, it is impossible to state the existence of such an easement with any certainty.
Sometime after Melton built her house and began using the driveway in the northern part of lot 10, Tolbert subdivided lot 10 into lot 10A to the north and lot 10B to the south. Melton’s driveway was located entirely on lot 10A. The .platted easement *698 was located entirely on lot 10B. In 1994, a house was built over part of the easement on lot 10B, blocking all but a 10-foot-wide strip of the 30-foot-wide platted easement.
When Tolbert died, he devised lots 10A and 10B to Jackson, his daughter. In 2007, Jackson began negotiations to sell lot 10A to HP, a company that owned a nearby subdivision. James Starr, a representative of HP, testified that Jackson told HP that Melton had no rights to the driveway located on lot 10A. Starr testified that he viewed the recorded plat showing an easement on what had become lot 10B and confirmed Jackson’s representation. HP then concluded that it could purchase lot 10A free of any encumbrances or easements. Jackson testified that she had assumed that the driveway across lot 10A belonged to Melton but concluded otherwise based on information she reviewed during the course of the sale of lot 10A to HP. It is undisputed that Starr told both Jackson and Melton that HP intended to move Melton’s driveway to lot 10B if it purchased lot 10A. HP purchased lot 10A from Jackson in December 2007.
In the spring of 2008, HP began to remove Melton’s driveway from lot 10A. Melton' filed her action against HP on April 15, 2008, seeking a judgment declaring that she had an easement across lot 10A in the location of the driveway. On April 16, 2008, Melton requested that the trial court enjoin HP from destroying the driveway. It is unclear how the trial court ruled on Melton’s request, but by the time the action came to trial on Melton’s trespass and declaratory-judgment claims, HP had destroyed Melton’s driveway and had put in a gravel driveway for her on lot 10B. That driveway was situated along the 10 feet of the 30-foot platted easement that remained accessible after the house was constructed on lot 10B.
At trial, Melton’s attorney asked her why it was necessary for her to have access to her house through the driveway located on lot 10A. Melton responded: “It’s convenient for me to get to my home. I mean, it’s much more convenient” than the gravel driveway across lot 10B. She then described the various ways in which the gravel driveway over lot 10B was not as convenient for her as the driveway across lot 10A.
On January 7, 2009, the trial court entered a judgment in favor of HP, stating:
“After consideration of all evidence presented by the parties over the course of the trial, including the undersigned’s visit to the property at issue in this case, it is the decision of this Court that [Melton’s] request for relief is due to be denied. [Melton] has not held the property [on what became lot 10A] for the requisite twenty-year period necessary for an easement by prescription. See, e.g., Hanks v. Spann, 990 So.2d 399 (Ala.Civ.App.2008). [Melton] has also failed to show any necessity at law requiring an easement by implication. See, e.g., Arp v. Edmonds, 706 So.2d 736 (Ala.Civ.App.1997), and Helms v. Tullis, 398 So.2d 253 (Ala.1981). Ms. Melton has an existing recorded easement providing access to the road [across what became lot 10B], It is not within the Court’s power to change an easement based on convenience, nor based on the condition of the easements as long as the easements are useable for access to the road. In this instance, Ms. Melton’s current recorded easement [across what became lot 10B] is sufficient for access to the road from her property. Therefore, it is not within the Court’s power to grant her any property rights on [what became lot’ 10A] owned by [HP]. Judg *699 ment for [HP].”[3]
On January 29, 2009, Melton filed what she captioned a “motion for reconsideration,” but which was in substance a motion under Rule 59(e), Ala. R. Civ. P., to alter, amend, or vacate the judgment. The trial court gave HP 21 days to respond, and it did, but the trial court never ruled on Melton’s postjudgment motion. Under Rule 59.1, Ala. R. Civ. P., Melton’s motion was denied by operation of law on April 29, 2009. Melton thereafter filed a timely notice of appeal to this Court.

Analysis

Melton advances six arguments on appeal: 1) that Jackson and a member of the Bass family should have been joined as necessary parties under Rule 19, Ala. R. Civ. P.; 2) that the trial court should have reformed the deed that granted her an easement across lot 10; 3) that she had an easement across lot 10A based on a theory of statutory adverse possession; 4) that she had an easement by prescription across lot 10A; 5) that she had an easement by necessity across lot 10A; and 6) that she had an easement by implication across lot 10A.
I. Joinder of Parties
In her brief on appeal, Melton argues that the trial court erred in failing to join both Jackson and a member of the Bass family as indispensable parties under Rule 19, Ala. R. Civ. P. Melton did not raise these arguments before the trial court. This Court has explained:
“The absence of an indispensable party can be raised for the first time on appeal by the parties or by the appellate court ex mero motu, even if the parties did not present the issue to the trial court. Crum v. SouthTrust Bank of Alabama, NA., 598 So.2d 867 (Ala.1992); J.C. Jacobs Banking Co. v. Campbell, 406 So.2d 834 (Ala.1981). Therefore, the [appellants’] delay in arguing this issue to the trial court is not dispositive. The rule, however, gives the trial court the discretion to permit or to deny the joinder of an additional party. See Rule 19(b), Ala. R. Civ. P.; Felder v. State, 515 So.2d 17 (Ala.Civ.App.1987).”
Gilbert v. Nicholson, 845 So.2d 785, 790 (Ala.2002) (affirming the trial court’s order denying a motion to join an alleged indispensable party because party had not objected to the proposed road over her property and the parties to the action had previously agreed that she would not be joined); see also Rule 19(b), Ala.-R. Civ. P.
Regarding the Bass family, at trial there was only a vague mention that Melton may have an easement to lot 9B across property now owned by the Bass family. Because the record is not clear on even the existence of this easement, there is simply not enough information in the record to support a finding that joinder of a member of the Bass family should be required under Rule 19. Melton, therefore, has not shown that the trial court’s judgment should be reversed on this basis.
Regarding Jackson, the trial court raised the issue of Jackson’s joinder in its September 3, 2008, order. The trial court stated that Jackson “should be joined as a party and at the very least testimony should remain open until she testifies before the court.” However, at the hearing on November 12, 2008, the trial court gave Melton the choice of attempting to join *700 Jackson as an indispensable party or of merely submitting her testimony. Melton’s attorney chose the latter.
On appeal, Melton argues that, in deciding whether an easement existed in her favor across lot 10A, the trial court was also deciding whether an alternate means of • access existed across lot I OB, and, therefore, Melton argues, its decision affected Jackson’s interest in lot 10B. Melton also argues that, as a result of the trial court’s judgment, Jackson must remove the house that blocked part of the easement over lot 10B. However, the trial court has entered no such order.
The evidence shows that Melton has an unchallenged right to a 10-fooh-wide easement over lot 10B. There is no evidence indicating that Jackson ever challenged the easement over lot 10B or that she objected to Melton’s use of the easement over lot 10B to access lot 9B. Despite Melton’s arguments, the question whether the use of a narrower easement on lot 10B is inconsistent with Melton’s rights under the 30-fooL-wide platted easement is not before us. The question whether the existence of an easement, albeit narrower than the easement called for in the plat, may serve as a basis on which to deny an easement by implication or by necessity on lot 10A does not require the joinder of Jackson, whose property is presently burdened by a 10-foot-wide gravel driveway to lot 9B. Whether Melton may assert her rights to a full 30-foot-wide easement is a question for another day in an action between Melton and Jackson. It is apparent that the trial court exercised the discretion provided it in Rule 19(b), Ala. R. Civ. P., see Gilbert, supra, and determined that Jackson was not an indispensable party. Melton has not shown that the trial court exceeded its discretion.
This Court stated in J.R. McClenney & Son, Inc. v. Reimer, 435 So.2d 50, 52 (Ala.1983), that “ ‘ “[indispensable parties” are persons who not only have an interest in the controversy but an-interest of such a nature that a final decree cannot be made without either affecting that interest or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience.’ ” (Quoting 1 Champ Lyons, Alabama Practice, Rules of Civil Procedure, at 389 (1973).) The Court further stated in Reimer:
“There is no prescribed formula to be mechanically applied in every case to determine whether a party is an indispensable party or merely a proper or necessary one. This is a question to be decided in the context of the particular case. Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). The issue is one to be decided by applying equitable principles and, under the circumstances of this case, it would be inequitable to vacate this judgment on motion of the defendant, which has so blatantly ignored the rules under which its mortgagee bank could have so easily been made a party.”
435 So.2d at 52 (emphasis added). The conclusion reached in Reimer is particularly appropriate to the facts here presented.
II. Reformation of Deed
Melton argues on appeal that the trial court erred in failing to reform the deed from Tolbert granting her the platted easement over the southern part of lot 10, what is now lot 10B. Melton did not argue to the trial court, either in her complaint or at trial, that the deed should be reformed. She raised the argument for the first time in her postjudgment motion. This Court has held that the trial court has discretion whether to consider arguments raised for the first time in a postjudgment *701 motion. See, e.g., Special Assets, LLC v. Chase Home Fin., LLC, 991 So.2d 668, 676-77 (Ala.2007); Green Tree Acceptance, Inc. v. Blalock, 525 So.2d 1366, 1369 (Ala.1988) (“[A] trial court has the discretion to consider a new legal argument in a post-judgment motion, but is not required to do so.”). Melton has not identified any justification for her delay in raising this argument. Her postjudgment motion was denied by operation of law when the trial court failed to rule on it within 90 days. See Rule 59.1, Ala. R. Civ. P. Therefore, there is no indication in the record that the trial court considered Melton’s argument regarding reformation, and we are not required to presume that it did. See Special Assets, supra. Melton has not shown any basis upon which we can conclude that the trial court exceeded its discretion in failing to consider her argument regarding reformation.
III. Statutory Adverse Possession
On appeal, Melton argues that the trial court erred in failing to award her an easement over lot 10A by statutory adverse possession. HP argues that Melton raised this issue for the first time in her postjudgment motion. Melton responds, pointing to paragraph 6 of her complaint in which she alleged that she “used the easement openly and hostilely for the statutorily required ten year period, Section 18-3-1 of the Code of Alabama [1975], and therefore ha[d] established the easement through prescriptive means.” (Emphasis added.) However, § 18-3-1, Ala.Code 1975 (which allows a right-of-way for landlocked property), does not require a.showing of use for 10 years, and the period required to acquire an easement by prescription is 20 years. Based on this anomaly in her pleadings, Melton argues in her reply brief that she did state a claim for statutory adverse possession under ■§ 6-5-200, Ala.Code 1975, which requires color of title or listing for taxation for 10 years.
Despite its shortcomings, the complaint put the trial court on notice that the issue of adverse possession based on a 10-year use period was to be tried. However, as discussed below, the evidence presented to the trial court was insufficient to satisfy the requirements of adverse possession under § 6-5-200.
This Court has explained:
“An easement by prescnption is acquired by use of ‘ “the premises over which the easement is claimed for a period of twenty years or more, adversely to the owner of the premises, under claim of right, exclusive, continuous, and uninterrupted, with actual or presumptive knowledge of the owner.” ’ Blalock v. Conzelman, 751 So.2d 2, 4 (Ala.1999) (quoting Bull v. Salsman, 435 So.2d 27, 29 (Ala.1983)).
“An easement by ‘adverse use for the statutory period’ requires satisfaction of the nontemporal elements of the prescriptive easement, plus one of the three additional requirements of Ala. Code 1975, §' 6-5-200:
“ ‘(a) Adverse possession cannot confer or defeat title to land unless:
“ ‘(1) The party setting it up shall show that a deed or other color of title purporting to convey title to him has been duly recorded in the office of the judge of probate of the county in which the land lies for 10 years before the commencement of the action;
“ ‘(2) He and those through whom he claims shall have annually listed the land for taxation in the proper county for 10 years prior to the commencement of the action if the land is subject to taxation; or
*702 “ ‘(8) He derives title by descent cast or devise from a predecessor in the title who was in possession of the land.’
“(Emphasis added.) If the requirements of ‘adverse use for the statutory period’ are met, then a use will ripen into an easement by adverse possession in 10 years, instead of the 20 years required to establish a prescriptive easement. Downey v. North Alabama Mineral Dev. Co., 420 So.2d 68 (Ala.1982).”
Jones v. Johnson, 827 So.2d 768, 771-72 (Ala.2002).
Melton did not present any evidence showing that her use of the driveway across lot 10A was adverse to either Tol-bert or Jackson, the respective owners of lot 10A. Instead, the evidence repeatedly and consistently showed that Melton’s use of the driveway was permissive. Additionally, Melton argues on appeal that the deed creating an easement across lot 10B satisfies the eolor-of-title requirement of § 6-5-200(a)(l). However, color of title as to an easement over lot 10B cannot satisfy the requirement for color of title with respect to an easement over lot 10A. Neither of the other two methods described above in Jones v. Johnson have been satisfied. Accordingly, Melton has not shown that she satisfied the requirements for a finding of adverse possession in her favor as to an easement over lot 10A under § 6-5-200.
IV. Easement by Prescription
In her complaint, Melton sought a judgment declaring that she had an easement by prescription in the driveway across lot 10A. Although Melton’s attorney did not focus on the issue at trial, HP’s attorney argued expressly against any recovery based on a theory of easement by prescription. Melton’s complaint put the trial court on notice of this issue, and the trial court concluded that Melton “has not held the property for the requisite twenty-year period necessary for an easement by prescription.”
Upon a review of the evidence, it is apparent that Melton has not satisfied the requirements for an easement by prescription. See, e.g., Jones v. Johnson, supra. As noted above, Melton has not shown that her use of the driveway across lot 10A was adverse to the respective owners of that property. Additionally, it is undisputed that Melton used the driveway over lot 10A for 18 years. The trial court correctly determined that Melton cannot satisfy the 20-year use requirement for an easement by prescription.
V. Easement by Implication and Easement by Necessity
On appeal, Melton argues that she had an easement by implication and an easement by necessity across lot 10A in the location of her driveway. Because the elements of these two forms of easement are substantially similar, it is expedient to discuss these arguments together. See, e.g., Helms v. Tullis, 398 So.2d 253 (Ala.1981).
Melton alleged in her complaint and argued extensively at trial and in her post-judgment motion that she had an easement by implication. She did not assert any claim for an easement by necessity in her complaint. However, the parties presented evidence and argued extensively at trial regarding whether it was necessary for Melton to have a driveway across lot 10A. Melton also presented limited evidence regarding original unity of title. During trial, the court stated its opinion that the issue in the case was whether the access Melton sought was necessary or merely a convenience. It is apparent, therefore, that the issue whether Melton was entitled to an easement by necessity was tried by *703 the consent of the parties under Rule 15, Ala. R. Civ. P.
The trial court concluded that Melton “failed to show any necessity at law requiring an easement by implication.” This Court has stated the requirements for easements by implication and by necessity, explaining:
“Creation by necessity is actually a form of creation by implication, but is treated separately by some authors. See R. Powell, Powell on Real Property ¶¶ 410-11 (abr. ed.1968). See also II American Law of Property §§ 8.31-.43 (A. Casner ed.1952); Restatement of the Law of Property §§ 474-76 (1944).
“The rationale for allowing an easement by necessity is that public policy demands that land not be rendered unusable. R. Powell, supra, ¶ 410. Under Alabama law, however, there must be a genuine necessity; mere convenience is not enough. Benedict v. Little, 288 Ala. 638, 264 So.2d 491 (1972); Roberts v. Monroe, 261 Ala. 569, 75 So.2d 492 (1954); Birmingham Trust & Savings Co. v. Mason, 222 Ala. 38, 130 So. 559 (1930). The burden is on the one seeking to establish the easement to prove the easement is ‘reasonably necessary for the enjoyment’ of the land. Roberts v. Monroe, 261 Ala. 569, 75 So.2d 492 (1954). Easements by necessity almost always involve access roads across the servient tenement connecting the dominant tenement to a public road or highway. ... Original unity of ownership of the dominant and servient tenements is always required for an easement by necessity. Crawford v. Tucker, 258 Ala. 658, 64 So.2d 411 (1953).
“Easements created by implication cover a variety of types of easements. Creation by this method requires not only original unity of ownership, Brewer v. Avinger, 208 Ala. 411, 94 So. 590 (1922), but also that the use be open, visible, continuous, and reasonably necessary to the estate granted. Birmingham Trust & Savings Co. v. Mason, 222 Ala. 38, 130 So. 559 (1930); Walker v. Clifford, 128 Ala. 67, 29 So. 588 (1901). The implication is that the parties implied such an easement because the grantee, having seen the use the grantor made of the property, can reasonably expect a continuance of the former manner of use. R. Powell, supra, ¶ 411.”
Helms v. Tullis, 398 So.2d at 255-56 (emphasis added); see also Hereford v. Gingo-Morgan Park, 551 So.2d 918, 921 (Ala.1989).
Melton testified repeatedly about the convenience of the driveway across lot 10A as opposed to the gravel driveway across lot 10B. However, “mere convenience is not enough.” Helms, 398 So.2d at 255. In light of the existence of a documented easement providing Melton access to lot 9B over lot 10B — albeit as actually used today a lesser easement than what was initially granted — the trial court correctly concluded that Melton did not show that access to lot 9B via the driveway on lot 10A was necessary; therefore,. Melton has not satisfied the requirements of an easement by necessity. Furthermore, regarding an easement by implication, Melton did not establish that the land that became Melton’s driveway on what became lot 10A was used as a drive or roadway at the time of the conveyance terminating the unity . of ownership. As explained in Helms, supra, the use must exist at the time of the grant of the property. Consequently, we need not address the differing proof with regard to the degree of necessity required to establish an easement by implication, as opposed to an easement by necessity.

*704
Conclusion

Based on the foregoing, we affirm the trial court’s judgment.
AFFIRMED.
COBB, C.J., and STUART, BOLIN, and MURDOCK, JJ., concur.

. In her brief on appeal, Melton framed one of the issues as: "Whether [HP] failed to prove by preponderance of the evidence that it had title to the land on which [Melton] claimed her easement, once challenged.” However, in her brief, Melton did not argue, discuss, or cite any evidence or authority regarding this issue. HP responded, without citation to authority, arguing that it did not have the burden of proving title. In her reply brief, Melton argues the issue. We will not consider this issue because Melton did not adequately raise it in her principal brief on appeal; this Court will not consider arguments made for the first time in a reply brief. See, e.g., Kyser v. Harrison, 908 So.2d 914, 917 (Ala.2005) (finding argument waived under Rule 28(a)(10), Ala. R.App. P., where argument was made in initial brief but was not supported with authority until reply brief).

. Jackson testified at trial that before Melton built her house, children in the family used to play on lot 10 and would, on occasion, walk across lot 10 to get to lot 9B. However, Jackson did not specify that any particular location was used, and the area in the northern part of lot 10 that became Melton's driveway was not used as a road or driveway until Melton built her house.

. In its written order, the trial court did not address Melton’s trespass claim, but it did enter a judgment in the State Judicial Information System in HP's favor as to all Melton’s claims. In her brief on appeal, Melton has not asserted any arguments related to her trespass claim.